IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEBORAH PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV21 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Deborah Parker ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on May 22, 2013, alleging a disability onset date of

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

September 8, 2011. (Tr. at 12, 185-94.)[2] Her applications were denied initially (Tr. at 48-79) and upon reconsideration (Tr. at 80-103). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 129-30.) Plaintiff attended the subsequent hearing on March 15, 2016, along with her attorney and an impartial vocational expert. (Tr. at 12.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through June 2, 2016, the date of her decision. (Tr. at 21.) On November 14, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.) Plaintiff later filed another application for benefits, which was approved retroactive to June 3, 2016, the date after the ALJ's denial. In the present case, she seeks judicial review of the decision denying her claim through June 2, 2016.

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

2

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since September 8, 2011, her alleged onset date. Plaintiff therefore met her burden

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from a single severe impairment:

> degenerative disc disease of the cervical and lumbar spines.

(Tr. at 14.) The ALJ found at step three that this impairment failed to meet or equal a disability listing. (Tr. at 16.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform sedentary work, with additional limitations:

> [Plaintiff] is able to occasionally climb stairs, stoop, crouch, crawl, and kneel; never climb ladders; occasionally reach to shoulder level or above on the left side; and needs to stand every 45 minutes for two to three minutes at a time.

(Tr. at 16.) Based on this determination and the testimony of the vocational expert, the ALJ found under step four of the analysis that Plaintiff could return to her past relevant work as a claims consultant. (Tr. at 20.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 21.)

Plaintiff now raises two challenges to the ALJ's decision. First, she contends that, at step four, the ALJ "failed to identify and obtain a reasonable explanation for the apparent conflict between the testimony of the [vocational expert] and the [Dictionary of Occupational Titles ("DOT")] regarding the reaching requirements of Plaintiff's past relevant work as an insurance claims consultant." (Pl.'s Br. [Doc. #11] at 4.) Second, Plaintiff argues that the ALJ "erred by failing to include any mental limitations in the RFC," particularly in light of the

subsequent administrative decision granting her request for benefits once her mental impairments were included. (Id. at 9.)

> A. Past Relevant Work

Plaintiff first contends that the ALJ erred at step four of the sequential analysis by finding that she was able to return to her past relevant work.[5] "[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past *or* as it is generally required by employers in the national economy." Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995) (citing SSR 82–61); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990) ("The two tests [in SSR 82–61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate."). Thus, in undertaking the evaluation at step four, the ALJ may consider whether the plaintiff can perform her past relevant work as she actually performed it, *or* whether the plaintiff can perform her past relevant work as generally performed in the national economy.

The plaintiff has the burden of showing that she can no longer perform her past relevant work. 20 C.F.R. § 416.920(e); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (noting that through step four of the sequential evaluation process, Plaintiff carries the burden of production and proof). "Nevertheless, the ALJ still has a duty to make the requisite factual findings to support his conclusion. In finding that an individual has the capacity to perform a past relevant job, the [ALJ's] decision must include a specific finding of fact as to the physical

---

[5] Plaintiff notes that if the ALJ had determined that she could not return to her past relevant work, a finding of "disabled" would have been directed under the Medical Vocational Guidelines. (Pl.'s Br. [Doc. #11] at 7-8.)

and mental demands of the past job as well as analysis of whether that individual's RFC would impact her ability to perform such a job." Boler v. Colvin, 2013 WL 5423647, at *3 (M.D.N.C. Sept. 26, 2013) (internal citations and quotations omitted). In particular, Social Security Rulings and Regulations provide that, "[i]n finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Social Security Ruling 82-63, Titles II and XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General, 1982 WL 31386, at *4 (Jan. 1, 1982) ("SSR 82–62"); see also 20 C.F.R. 416.920(e); Alderman v. Barnhart, 297 F. Supp. 2d 876, 879 (W.D. Va. 2003) ("[I]n finding that an individual has the capacity to perform a past relevant job, the [ALJ's] decision must include a specific 'finding of fact as to the physical and mental demands of the past job'" as well as analysis of whether that individual's RFC would impact her ability to perform such a job).

In the present case, the ALJ concluded, based on the vocational expert's testimony, that Plaintiff is able to perform her past relevant work as a claims consultant "as actually and generally performed." (Tr. at 21.) However, the DOT describes the job of claims consultant as requiring frequent reaching, in direct contradiction to the ALJ's RFC finding that Plaintiff can only "occasionally reach to shoulder level or above on the left side." DICOT 241.362-

8

010, 1991 WL 672250; (Tr. at 16). The ALJ's decision states that "[p]ursuant to SSR 00-4p, the undersigned . . . determined that the vocational expert's testimony is consistent with the information contained in the [DOT]," but in her very brief examination of the vocational expert, the ALJ never asked the expert whether her testimony was consistent with the DOT, let alone elicited any explanation for discrepancies. (Tr. at 21, 45-46.)

As Plaintiff correctly notes, in Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit recently clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, it can only provide substantial evidence if the ALJ "received an explanation from the expert explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the expert's testimony rather than the DOT." Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016) (citing Pearson, 810 F.3d at 209–10). Because the ALJ in the present case took none of the steps required by Pearson, her finding that Plaintiff could return to her past work as generally performed is unsupported by substantial evidence.

Defendant does not contend that the vocational expert's testimony is consistent with the DOT, nor does Defendant dispute the apparent unresolved conflict. However, Defendant argues that "[i]f a claimant has the RFC to do her past work as actually performed, it is irrelevant to the step four analysis if the DOT description of the job as generally performed exceeds the requirements of the claimant's past work as actually performed." (Def.'s Br. [Doc. #13] at 10) (citations omitted). In a recent case in this District, this Court agreed with this principle, and found such an unresolved conflict harmless where the ALJ made findings

9

regarding the Plaintiff's past work and concluded that she was able to return to her past work as actually performed. See Way v. Berryhill, 2018 WL 1033275 (M.D.N.C. Feb. 22, 2018). However, in Way, there was evidence in the record from the claimant specifying the physical requirements of the position as performed, and the ALJ made specific findings in the decision based on the claimant's testimony with respect to the demands of her past work. As noted above, where an ALJ finds a claimant capable of performing her past work as actually performed, she must still make the three, specific findings of fact set out in SSR 82–62. Most importantly for this case, "in finding that an individual has the capacity to perform a past relevant job, the [ALJ's] decision must include a specific 'finding of fact as to the physical and mental demands of the past job'" as well as analysis of whether that individual's RFC would impact her ability to perform such a job. Alderman v. Barnhart, 297 F. Supp. 2d 876, 879 (W.D. Va. 2003); see also SSR 82-62 ("The decision as to whether the claimant retains the functional capacity to perform past work . . . must be developed and explained fully in the disability decision.").

In this case, the vocational expert did not examine any details or provide any testimony regarding Plaintiff's prior relevant work, other than to testify that "[s]he's worked as a claim clerk I, DOT number 241.362-010, with a strength level of sedentary and an SVP or 4, which is semi-skilled." (Tr. at 45.) When asked whether an individual with the limitations reflected in the RFC could do any of the past work, the vocational expert testified, "The claims clerk I, Your Honor." (Tr. at 46.) Thus, the vocational expert described Plaintiff's past work only by its description in the DOT and testified that Plaintiff could perform that work as a "claims clerk I," without any further testimony or distinction regarding her duties as actually

performed. Likewise, the ALJ noted with respect to Plaintiff's past relevant work that "[t]he vocational expert testified that the claimant has past work per the Dictionary of Occupational Titles (DOT) as a claims consultant (DOT #241.362-010, sedentary, semiskilled work at SVP 4)." (Tr. at 20.) In finding that Plaintiff was able to return to her past relevant work, the ALJ stated that:

> The vocational expert further testified that if an individual had the claimant's residual functional capacity, such an individual could perform the claimant's past relevant work as a claims consultant. The vocational expert went on to state that even if the claimant had to use a cane, the claimant would still be able to perform her past work as a claims consultant. Accordingly, in comparing the claimant's residual functional capacity to the physical and mental demands of this work [the ALJ found] that the claimant is able to perform it as actually and generally performed.

(Tr. at 21.) The decision contains no description of, or even a reference to, any demands of Plaintiff's past relevant work. Defendant now suggests that this omission is harmless, as nothing in Plaintiff's testimony regarding her job explicitly indicates frequent reaching (Def.'s Br. at 7) (citing Tr. at 31). However, Plaintiff's testimony regarding her past relevant work generally described the work but did not specifically address the physical requirements at issue.[6] Moreover, the record does not include a work history report with any specific description of the physical demands of the position as performed. See Boler v. Colvin, 2013 WL 5423647 (M.D.N.C. Sept. 26, 2013) (concluding that remand was required where the ALJ summarily found that the claimant was able to perform her past work as actually performed, but "the decision is completely void of any further analysis, and no description of Ms. Boler's

---

[6] Plaintiff described her job duties as being "constantly on the phone with the customer inputting data [and] transferring calls to the claim representatives or to Customer Service." (Tr. at 31.) As she correctly notes, this description arguably "indicates a great deal of reaching for phones, buttons[,] and files, consistent with the DOT's description of the job requiring frequent reaching." (Pl.'s Resp. Br. [Doc. #14] at 2.)

11

work as a hotel housekeeper appears in the record" since she "never filled out the work background sheet associated with her disability application"). In contrast, in the cases cited by Defendant, substantial evidence was contained in the record to support a finding made by the ALJ regarding the claimant's past relevant work.[7] In the present case, the vocational expert and the ALJ both relied only on the DOT description of a "claims consultant I" to define the physical demands of Plaintiff's past work, and did not make any other findings of fact as to the physical demands of Plaintiff's past work. As noted above, there is an apparent unresolved conflict between the DOT and the reaching restrictions included in the RFC. To the extent

---

[7] See, e.g., Pass v. Chater, 65 F.3d 1200, 1202, 1207 (4th Cir. 1995) (noting that the ALJ "proceeded to examine Pass's residual functional capacity and his employment history" and found that "[h]is guard duties involved sitting on a chair in a booth and monitoring people coming through the gate; there was no strenuous activity involved in the work" and "Pass concedes that if his position still existed, he would be able to perform the job"); Finney v. Astrue, No. 1:11CV109, 2014 WL 204213 (M.D.N.C. Jan. 17, 2014) (noting that "[t]he ALJ also made a finding of fact as to the physical and mental demands of Plaintiff's past job/occupation as a shipping clerk at a check company, based on her own testimony as to the demands of that job" in light of the ALJ's specific findings that the claimant had "'stated that the job could be performed in either a seated or a standing position'" and the ALJ's specific findings that "'[s]ince the claimant's testimony revealed that her work as a shipping clerk could be performed in either a sitting or standing position, the claimant remains able to perform the range of work activity required in her past relevant work'")(quoting ALJ decision), report and recommendation adopted, 2014 WL 791848, (M.D.N.C. Feb. 25, 2014), aff'd, 586 Fed. App'x 143 (4th Cir. 2014); Cecchini v. Astrue, No. 5:08-01392, 2010 WL 1404093, at *4 (S.D. W. Va. Mar. 31, 2010) (noting that "in Claimant's Work History Report, she reported that the auto sales person job required her to reach only two out of eight hours per day" and "[s]uch a requirement is consistent with the ALJ's assessed RFC" and "because the ALJ found that Claimant could perform some of her past relevant work as she actually performed it, and because she performed her past relevant work as an auto sales person consistently within the reaching limitations assessed by the ALJ, the ALJ was not required to rely on vocational expert testimony at step four of the sequential analysis"); Vachon v. Colvin, No. 2:15-CV-112-JHR, 2015 WL 5736837, at *3 (D. Me. Sept. 29, 2015) (noting that in his work history report "[t]he plaintiff himself had described that job as requiring no handling" and any errors by the ALJ were therefore harmless); Williamson v. Colvin, No. 1:10CV547, 2014 WL 459850, at *4 ( M.D.N.C. Feb. 5, 2014) (noting that "Plaintiff completed a Disability Report in which he indicated that his past work as a shipping clerk involved lifting up to 60 to 70 pounds, with frequent lifting of 50 pounds" and "[t]he ALJ thus readily determined, without need of a VE, that Plaintiff's PRW involved exertional activities which far exceeded his RFC of light work"); Johnson v. Comm'r Soc. Sec., No. 10-14357 2011 WL 5553823, at *6 n.5 (E.D. Mich. Oct. 31, 2011) ("Here, after finding an RFC, the ALJ thoroughly discussed the duties of Plaintiff's former job duties and the rationale for finding that the RFC did not preclude the job of loan officer as performed"); Gonzalez v. Astrue, No. CV 08-1108 AJW, 2009 WL 3756658, at *6 (C.D. Cal. Nov. 5, 2009) (relying on the plaintiff's vocational report, in which he "stated that his past job as a dog bather at Petco did not require use of any machines or equipment, involved no technical knowledge or skills, did not require writing or completing reports, and did not involve supervising others," which was consistent with the RFC).

the ALJ relied on the DOT description to define the physical demands of Plaintiff's past work, it is up to the ALJ to resolve this conflict; alternatively, to the extent the ALJ could have instead made further inquiry and findings regarding the actual duties performed by Plaintiff and the physical demands of the work as actually performed, that is for the ALJ, not the Court, to address in the first instance. See also Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 (M.D.N.C. March 25, 2014) ("Review of the ALJ's ruling is limited further by the so-called '*Chenery Doctrine*,' which prohibits courts from considering *post hoc* rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)). Therefore, remand is required to allow the ALJ to make this determination and include the requisite findings. Because this matter requires remand, the Court need not address the additional issue raised by Plaintiff.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #12] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #10] should be

GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 2nd day of March, 2018.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge